IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EULA W. RIVERS,                    *
                                   *
     Plaintiff,                    *
                                   *
vs.                                *    CIVIL ACTION 11-00365-B
                                   *
MICHAEL J. ASTRUE,                 *
Commissioner of Social Security,   *
                                   *
     Defendant.                    *

<u>ORDER</u>

Plaintiff Eula W. Rivers ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, <u>et</u>. <u>seq.</u>, and 1381, <u>et</u>. <u>seq</u>.  On March 26, 2012, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c). (Doc. 18).  Oral argument was waived.  Upon careful consideration of the administrative record and the arguments and briefs of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.    **Procedural History**

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on October 24, 2007. (Tr. 133). Plaintiff alleges that she has been disabled since May 9, 2007, due to degenerative disc disease of the cervical spine and lumbar spine. (Id. at 64). Plaintiff's applications were denied at the initial stage. (Id. at 60-66). She filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Id. at 67-68).   On August 3, 2009, Administrative Law Judge Renee Hagler held an administrative hearing, which was attended by Plaintiff, her attorney, and vocational expert, Jody Skinner. (Id. at 34-59). On August 19, 2009, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 23-33). Plaintiff's request for review was denied by the Appeals Council ("AC") on May 13, 2011, and upon review of additional evidence, the AC again denied Plaintiff's request for review on June 9, 2011. (Id. at 1-22).

The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

## II.  **Issues on Appeal**

A.  Whether substantial evidence supports the ALJ's
    determination that Plaintiff retained the residual
    functioning capacity to perform light work.

B.  Whether the ALJ erred in failing to develop the record
    by not ordering an orthopedic consultative
    examination.

C.  Whether the ALJ erred by improperly rejecting
    Plaintiff's subjective complaints of pain.

## III. **Factual Background**

Plaintiff was born on June 17, 1960, and was forty-nine
(49) years of age at the time of the administrative hearing.
(Tr. 39, 60-61, 112).  Plaintiff has an eighth grade education
and past relevant work ("PRW") as a dump truck driver.  (Id. at
31, 39, 153, 157).

At the hearing, Plaintiff testified that she currently
works five (5) days a week, between two (2) and four (4) hours a
day cleaning motel rooms.  (Id. at 40-41).  Plaintiff further
testified that prior to her work cleaning motel rooms, she
worked in May 2007 driving a dump truck.  (Id. at 41-42).
According to Plaintiff, she is unable to work full-time due to
pain in her neck and back.  (Id. at 45).  Plaintiff also
testified that she has pain generating down into her right arm
and her legs, that she is unable to grip with her right hand,

and that she has to wear a back brace when she stands or walks. (Id.)

Plaintiff further testified that she is able to grip a coffee cup or a door handle, that she can pick up small items such as an ink pen with each hand, that she can lift a gallon of milk and grocery shop, that she can prepare a simple meal for herself, that she can bathe, dress, and comb her hair without assistance, that she can make a bed, and that she can drive. (Id. at 50-53).  According to Plaintiff, she cannot climb stairs, bend over, stoop or squat, and her grandson assists with household chores such as sweeping and vacuuming.  (Id.).

**IV.  Analysis**

    **A.  Standard Of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th

---

[1] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Cir. 1986).   The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his disability.   20 C.F.R. §§ 404.1512, 416.912.   Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a).   The Social Security regulations provide a five-step sequential evaluation

process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[2]

In the case <u>sub judice</u>, the ALJ determined that Plaintiff met the non-disability requirements for disability insurance benefits through December 31, 2011. (Tr. 28). The ALJ noted that while Plaintiff has worked part-time as a housekeeper since January 2009, which is *after* her alleged onset date, the work

---

[2] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. <u>Id.</u> at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. <u>Sryock v. Heckler</u>, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999). <u>See also Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

done did not rise to the level of substantial gainful activity.[3] Thus, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (Id.). The ALJ concluded that while Plaintiff has the severe impairments of cervical disc disease, lower back pain, and chronic kidney stones, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Id. at 28-29).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform light work, that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, that Plaintiff can sit, stand, and walk for 6 out of 8 hours, and that Plaintiff needs to alternate positions every 2 hours. (Id. at 29).

The ALJ next determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible. (Id. at 30). The ALJ concluded that Plaintiff's RFC precludes her from performing any of her past work. (Id. at 31). Relying on the testimony of the VE, the ALJ found that,

---

[3]  The ALJ noted that Plaintiff earns "just under the substantial gainful activity levels for each month." (Id. at 28).

considering Plaintiff's RFC and vocational factors, such as age, education and work experience, Plaintiff is able to perform other jobs existing in significant numbers in the national economy such as cashier, information clerk, and assembler. (Id. at 32). The ALJ thus concluded that Plaintiff is not disabled. (Id. at 33).

### 1. **Medical Evidence**

The relevant medical evidence reflects that Plaintiff was treated by Drs. Tim Revels and Roger M. Setzler (with Alabama Orthopedic Clinic) from July 2005 through July 2007 for back and neck pain. (Id. at 226-51). In July 2005, Plaintiff reported long term back pain, which had gotten worse over the last four or five months. She also reported low back pain, tightness in muscles, and pain running down the right leg. On exam, Dr. Setzler found Plaintiff was intact neurologically in both upper and lower extremities with normal reflexes, normal sensation, and normal strength, and that Plaintiff exhibited low back and cervical tenderness. (Id. at 232).

X-rays of Plaintiff's cervical and lumbar spine showed "marked" degenerative changes throughout, specifically some fairly marked narrowing at L5-S1 of the facets and narrowing of C5-6. Dr. Setzler diagnosed Plaintiff with lumbar pain, cervical pain, degenerative joint disease, and degenerative disc disease of the cervical and lumbar spine. (Id.). Toradol 30mg

was recommended, and Plaintiff was prescribed Celebrex, 200 grams a day. (Id.).

During a July 28, 2005 visit, Plaintiff complained that she had been "miserable", and that the pain was now radiating down her right arm into her hand and was "unrelenting." Dr. Setzler ordered an MRI of Plaintiff's cervical spine, and she was provided Toradol 60mg. (Id. at 231). The MRI of Plaintiff's cervical spine revealed "a posterior disk bulge and some focal ligament flavum thickening creating some mild anterior/ posterior and bilateral foraminal encroachment at C5-6, but no other real changes [were] noted at that area; certainly, no herniated disks or real spinal cord involvement." (Id. at 230). Plaintiff's anti-inflammatory medications were continued. She was administered Toradol 60 mg, which had a positive effect during her prior visit, and she was advised to stay active. (Id.).

During her next visit on August 15, 2005, Dr. Setzler scheduled Plaintiff for a cervical steroid epidural bloc at C5-6. (Id. at 229). During Plaintiff's September 1, 2005 visit, she reported some improvement with neck pain and numbness, but the tingling in her arm remained. Dr. Setzler recommended a shot of Depo-Medrol, and noted that the epidural block may need to be repeated in a couple of weeks. (Id. at 228). The September 19, 2005 notes reflect that Plaintiff "has been

actually doing pretty well, but then started having a lot more trouble after the storm." (Id. at 227). The treatment notes also reflect that the epidural block had not helped as much as hoped and that Plaintiff suffered a fall, wherein she injured her ribs, but did not have any fractures. Another cervical steroid epidural block at C5-6 was recommended. (Id.).

In the notes dated November 16, 2005, Dr. Revels observed that Plaintiff had tried epidurals, careful modified lifestyle, physical therapy, and various medications with no improvement of her symptoms, and as a result, he discussed with her the options of pain management versus surgery, which would involve a C5-6 anterior cervical discectomy and fusion (ACDF). (Id. at 241). The November 30, 2005 treatment notes reflect that Plaintiff elected to proceed with the ACDF surgical procedure, and that Dr. Revels provided her with a work slip excusing her from her job for two months. (Id. at 240).

On January 10, 2006, Dr. Revels, with Dr. Setzler assisting, performed a C5-6 ACDF surgical procedure. The procedure included C5-6 anterior decompression and fusion with interbody prosthetic bone graft, C5-6 anterior spinal instrumentation, and bone marrow aspiration, left hip. (Id. at 242-44). During a follow-up visit on February 2, 2006, Dr. Revels noted that the x-rays showed good placement of the bone graft and hardware with no complications. Dr. Revels observed

that Plaintiff has "greatly" improved right arm radiculopathy and presented with only tightness, neck pain, spasm, and stiffness.   Dr. Revels recommended outpatient physical therapy and a RS medical stimulator.   (Id. at 239).

On March 8, 2006, Plaintiff reported that she was a passenger in a motor vehicle accident, which resulted in aggravation of her neck pain.   Dr. Revels' notes reflect that "was making an improvement until the ... MVA."   He recommended that Plaintiff continue with outpatient physical therapy, and he provided her a work slip indicating that she could return to her work as a dump truck driver the next day.   (Id. at 238).

Plaintiff was next seen by Dr. Revels on March 17, 2006, with complaints of post-operative bilateral severe neck pain, left more than right, resulting from a motor vehicle accident, and recurrent numbness and pain in her right arm.   X-rays of her back were taken and they showed no problems with the bone graft or hardware from her ACDF procedure.   Dr. Revels recommended that Plaintiff undergo an MRI of the cervical spine, and she was given a shot of Toradol.   (Id. at 237).

The MRI of her cervical spine was taken on March 25, 2006, and it revealed that the alignment and vertebral body height were well preserved, that mild disc desiccation is present to the visualized cervical spine, that the signal within the spinal cord of the cervical spine appeared within normal limits, and

11

that there was continued mucosal thickening within the maxillary sinuses and ethmoid air cells, similar to the previous MRI exam. (Id. at 250-51).

In a visit on April 5, 2006, Plaintiff reported neck pain with some pain down the right lateral forearm into the base of the wrist and thumb, and left forearm and fourth and fifth finger numbness.   On physical exam, Dr. Revels observed "findings of developing de Quervain's tenosynovitis[4] of the right wrist."   He recommended nerve conduction studies in the form of an EMG and NVC of Plaintiff's left arm and hand, and set her up for a right wrist thumb spica splint for her "de Quervain's tenosynovitis" of the wrist.   (Id. at 236).

Dr. Revels referred Plaintiff to Dr. Charles Hall for the EMG and NVC.   The tests were performed on April 16, 2006, and Dr. Hall reported that the results were normal, with no definite evidence of a focal or generalized peripheral neuropathy in the left upper extremity.   (Id. at 245-49).

Treatment notes dated April 26, 2006 reflect that Plaintiff attempted to return to work for a few days.   She reported

---

[4] De Quervain's tenosynovitis is inflammation of tendons on the side of the wrist at the base of the thumb.   These tendons include the extensor pollicis brevis and the abductor pollicis longus tendons.   De Quervain's tenosynovitis can be brought on by simple strain injury to the extensor pollicus longus tendon. See http://www.medicinenet.com/de_quervains_tenosynovitis/articl e.htm (last visited September 27, 2012).

aggravation of her neck and required an injection.   She was provided a work slip excusing her from work for another month. Dr. Revels noted that he would try to get her back to work. (Id. at 235).

During her May 24, 2006 visit, Plaintiff continued to report neck pain and stiffness.   She also advised Dr. Revels that she wanted to return to work in a week.   Dr. Revels prescribed Neurontin to help her rest.   (Id. at 234).   In treatment notes dated July 5, 2006, Dr. Revels observed that Plaintiff had not gotten any better since surgery, that because she was doing a lot of shoveling upon returning to work, her symptoms had gotten worst, and she was "living on Lortab at this point to try to get by."   He referred Plaintiff to Dr. Ruan for pain management.   (Id. at 233).

Plaintiff was treated by Xiulu Ruan, M.D. (hereinafter "Dr. Ruan") for pain management from July 6, 2006 until through at least June 4, 2010. (Id. at 263-84, 298-302, 324-363). Dr. Ruan's July 6, 2006 notes reflect that on exam, Plaintiff's neck was supple and her range of motion in the cervical spine was moderately decreased with flexion, extension, and lateral bending.   (Id. at 283-284).   Tenderness with palpation over the cervical spine midline and facet joint was observed, and she had a positive Spurling test.   Cervical paraspinal muscle spasm was also noted. Tenderness with palpation over thoracic and lumbar

facet joint and mild tenderness with palpation over SI joint were also observed. Dr. Ruan's diagnosis was degenerative lumbar disc disease, lumbar spondylosis, lumbar radiculitis, rule out LE neuropathy, degenerative cervical disc disease, cervical dystonia/cervical myofascial pain syndrome, cervicogenic headache, cervical spondylosis with facet syndrome, cervical radiculitis, rule out entrapment neuropathy, and failed cervical spine surgery syndrome. (Id. at 284).

Dr. Ruan's treatment plan for Plaintiff included use of a multidisciplinary approach, specifically Lyrica 75 mg for neuropathic pain, Lortab, muscle relaxers, and TENS therapy. (Id.). Plaintiff was also scheduled for LE NCS/EMG to evaluate for LE neuropathy versus lumbosacral radiculopathy and for a cervical myobloc injection for her cervical dystonia. Plaintiff was also directed to continue her TENS therapy. (Id.)

The record reflects that Plaintiff received cervical myobloc injections[5] on July 14, 2006, December 1, 2006, February 29, 2008, June 17, 2008, October 17, 2008, May 11, 2009, August 13, 2009, and March 18, 2010. (Id. at 270, 276, 325, 328, 330, 341, 346, 356-57).

---

[5] MYOBLOC® (rimabotulinumtoxinB) Injection is indicated for the treatment of adults with cervical dystonia to reduce the severity of abnormal head position and neck pain associated with cervical dystonia. See http://www.myobloc.com/myobloc/hcp/. (last visited September 27, 2012).

Plaintiff reported, during a visit on August 3, 2006, that Lyrica made her feel "drunk." (Id. at 273). During a September 28, 2006 visit, Plaintiff reported that her pain comes and goes but that it is worse at work, and that her current medications were not helping much. On exam, Plaintiff exhibited tenderness in the cervical spine and right trapezius muscle. Dr. Ruan provided her a sample of Provigil to try for a week. (Id. at 272). Dr. Ruan's treatment notes dated November 10, 2006 reflect that Plaintiff reported pain while turning her neck in her job as a dump truck driver. On exam, Plaintiff held her neck stiffly. She had tenderness on the right side of her neck down into her hand, and muscle spasm was noted. (Id. at 271).

Plaintiff was seen by Dr. Ruan on January 9, 2007, and she reported that her right side neck pain increases more when she is working as a driver, that she had been experiencing low back pain for three days, and that she was having problems sleeping. She also reported that she was not receiving benefit from the myobloc injections, and that Indocin and Cymbalta made her feel sick. She was continued on Lortab, Ultram, Provigal, and Allegra. (Id. at 269).

The record also contains a letter from Dr. Ruan to Plaintiff's employer at the Mobile County Commission. The letter, which is dated May 12, 2007, reads, in pertinent part as follows:

> Ms. Rivers has been under my care for her
> chronic neck and back pain since July 2006.
> She is on Ultram ER and Lortab for her
> severe pain symptoms. She was previously to
> work [sic] by her orthopedic spine surgeon
> Dr. Revels.  The above medications keep her
> pain tolerable and keep her functional. She
> denies any sedation or side effects with
> taking these medications. I believe that she
> should be able to drive as agreed by Dr.
> Revels while on these medications as they
> actually keep her functional.

(Id. at 267).

Dr. Ruan's treatment notes dated June 7, 2007 reflect that Plaintiff went back to work for three weeks, but upon getting a letter from Dr. Blessey, who is also treating Plaintiff, her employer would not allow her to return to work because Dr. Blessey opined that she could no longer drive, and he wants her to "get on disability." (Id. at 266).

In treatment notes dated July 12, 2007, Dr. Revels opined that because Plaintiff uses pain medication and muscle relaxants after work, in the evening, and when working, she only uses lidocaine patches, she should be able to return to work. (Id. at 226).

Dr. Ruan's treatment notes dated August 2, 2007 reflect that Plaintiff relayed to Dr. Ruan that during her visit with Dr. Revels on July 12, 2007, he opined that she was ready to return to work. Plaintiff also advised him that she does not "take the medicines at work, only when [she] would get home."

16

(Id. at 265).  Plaintiff reported some pain and numbness in her arm if she "sleeps [the] wrong way," and showed tenderness of the cervical spine and right upper trapezius muscle on exam. (Id.).

Plaintiff reported in a September 27, 2007 visit to Dr. Ruan that her employer would not let her return. She also reported numbness in her legs, that she had gone to the ER because of the numbness, and that the TENS therapy was helping with the numbness. (Id. at 264).

An MRI of her cervical spine on January 2, 2008 did not reveal any significant spinal canal or neural foraminal stenosis. (Id. at 301). Dr. Ruan's treatment notes dated April 16, 2008 reflect that Plaintiff reported she was having a hard time holding her head up straight after a fall two weeks prior. Dr. Ruan also noted that Plaintiff "wants desperately to go back to work." (Id. at 326).  On exam, Plaintiff had a good range of motion when moving her head from side to side but had tenderness in the bilateral trapezius muscles. (Id.).

During Plaintiff's June 11, 2008 visit with Dr. Ruan, Plaintiff reported that she had been doing well until three weeks prior when she started to have right side pain again. She indicated that she had not been resting well because she awakens in pain although Dr. Ruan had prescribed Ambien for her. (Id. at 327).

Dr. Ruan's treatment notes dated December 17, 2008 reflect that Plaintiff reported a headache lasting three weeks. On exam, the right trapezius muscle was extremely tender to touch. Dr. Ruan started Plaintiff on a prescription of Prednisone, and referred her for an MRI of her brain due to her headache. (Id. at 331). The December 31, 2008 MRI findings showed no major vascular territory infarct was present within the brain and no mass effect or midline shift was seen to the brain. The physician reviewing the MRI observed that Plaintiff's current MRI was essentially normal. (Id. at 332).

That same day, an MRI of Plaintiff's cervical spine was done. The results revealed "[m]agnetic susceptibility is present from anterior cervical fixation plate at the C5-C6 level. Straightening is present to the normal lordotic curvature of the cervical spine. Mild disc desiccation is seen to the cervical spine with disc heights maintained. Signal within the spinal cord of the cervical spine is within normal limits." (Id. at 333).

An MRI of Plaintiff's thoracic spine was taken on July 16, 2009. The results revealed posterior focal disc herniation at T8-9 with anterior cord contact but no stenosis of the central canal, foramina, or cord compression. (Id. at 342). That same day, Plaintiff had another MRI of her cervical spine. The imaging results showed that at C3-4, disc desiccation with

18

posterior disc bulge and facet hypertrophy were noted. Mild AP stenosis of 9.4 mm was observed. It was also noted that the stenosis was slightly more prominent than on prior exam. No other significant changes were seen. (Id. at 343).

A physical RFC was completed by Agency medical consultant Sheila Brody on February 1, 2008. (Id. at 316-23). Ms. Brody diagnosed Plaintiff with history of cervical fusion, hypertension, and vision loss. (Id. at 316). Ms. Brody opined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull for an unlimited amount of time. (Id. at 317). Additionally, she opined that Plaintiff has no limitations in postural, manipulative, visual, or communicative ranges; however, Ms. Brody opined that Plaintiff should not drive while taking pain medication that causes drowsiness. (Id. at 320).

2. **Issues**

a. **Whether substantial evidence supports the ALJ's determination that Plaintiff retained the residual functioning capacity to perform light work.**

In her brief, Plaintiff contends that the ALJ's RFC determination, which indicated that Plaintiff is able to perform light work, is not supported by substantial evidence. Specifically, Plaintiff asserts that while the ALJ gave

determinative weight to the opinions of Dr. Ruan and Dr. Revels, neither doctor completed a physical capacities assessment, nor did they give an opinion regarding Plaintiff's physical limitations. According to Plaintiff, there is "clear ambiguity and insufficiency" regarding her physical limitations, and the only physical capacities assessment in the record comes not from a treating or examining physician but from Shelia Brody, a non-examining Agency employee, who opined that Plaintiff can perform medium work. Plaintiff indicates that because the ALJ found Plaintiff capable of performing no more than light work, which is inconsistent with the Agency's physical capacities assessment, and because there is no assessment by a treating physician, the ALJ's determination is not supported by substantial evidence. Plaintiff cites Coleman v. Barnhart, 264 F. Supp. 2d 1007 (S.D. Ala. 2003) in support of her argument. (Doc. 13 at 5-6).

In opposition, the Commissioner counters that Plaintiff bears the burden of proving disability and of providing evidence to be used in RFC assessments, and that RFC determinations are the province of the ALJ and are based on all relevant evidence and not just medical evidence. The Commissioner further contends that the Coleman decision cannot be reconciled with the applicable regulations, and that there is no requirement that the ALJ's assessment be based on the RFC assessment of a

treating or examining source in every case. According to the Commissioner, the ALJ relied on evidence from Plaintiff's own physicians that she is able to work and such evidence demonstrates that the record was adequate for a determination of Plaintiff's abilities. (Doc. 14).

It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial. A claimant bears the burden of proving disability and for producing evidence in support of his claim while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007). This duty to develop the record exists even when the claimant is represented by counsel. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995). Indeed, applicable Social Security regulations provide that the Commissioner will pay the reasonable cost of providing existing medical records the Commissioner needs or requests. Hargove v. Astrue, 2012 U.S. Dist. LEXIS 69821, *31 (N.D. Fla. Mar. 15, 2012). The ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Strawder v. Astrue, 2011 U.S. Dist. LEXIS 122843, *20 (N.D. Fla. Aug. 8, 2011).

The responsibility for determining a plaintiff's RFC[6] lies with the ALJ and is based on all of the evidence of record. See Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (ALJ has duty to assess the residual functional capacity on the basis of all the relevant credible evidence of record); 20 C.F.R. §§ 404.1546, 416.946 (responsibility for determining a claimant's residual functional capacity lies with the ALJ). See also Foxx v. Astrue, 2009 U.S. Dist. LEXIS 80307, *17 (S.D. Ala. Sept. 3, 2009)("The RFC assessment must be based on all of the relevant evidence in the case such as: medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, and medical source statements."), citing SSR 96-8p, 1996 SSR LEXIS 5.

The undersigned finds that the record in this case contained sufficient evidence to enable the ALJ to make a RFC determination notwithstanding the absence of a physical assessment by a medical doctor, and that the ALJ fulfilled his duty to review all of the record evidence in determining Plaintiff's RFC.  In finding that Plaintiff can perform light

---

[6] "Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)." Peeler v. Astrue, 400 Fed. Appx. 492, 494 n.2 (11th Cir. 2010).

work, the ALJ assigned determinative weight to the opinion evidence from Plaintiff's treating physicians, Dr. Ruan and Dr. Revels. (Tr. 31-32). A review of the record reflects that while neither completed a Physical Capacities Assessment, both opined that Plaintiff could return to work. (Id. at 226, 267). In a letter to Plaintiff's employer dated May 12, 2007, Dr. Ruan advised that Plaintiff was on Ultram ER and Lortab for severe pain symptoms, that the medication keeps her functional, and that she denies any side effects from the medication. Dr. Ruan opined that Plaintiff could return to her truck driver position, which is classified as medium work. (Id.) Similarly, Dr. Revels opined that as long as Plaintiff used lidocaine patches while working, and saved her pain medication and muscle relaxers for use after work, she could return to work. (Id.) Further, at the administrative hearing, Plaintiff testified that she works part-time, five days a week, as a housekeeper at a motel, which is also classified as medium work. (Id. at 40-41). Plaintiff also testified that she is able to take care of her personal needs and perform some household chores. (Id. at 52-53). This substantial evidence supports the ALJ's RFC determination even in the absence of a physical assessment by a physician. Accordingly, Plaintiff's contention that the ALJ erred in developing her RFC is without merit.

> **b.   Whether the ALJ erred in failing to develop the
> record by not ordering an orthopedic
> consultative examination.**

Plaintiff next argues that the ALJ failed to develop a full
and fair record by not ordering a consultative orthopedic exam.
The Commissioner responds that Social Security Regulations only
require that a consultative examination be ordered when the
medical and non-medical evidence is insufficient or inadequate
for the ALJ to make a determination on Plaintiff's claims.

As indicated above, a claimant bears the burden of proving
disability and for producing evidence in support of his claim
while the ALJ has "a basic duty to develop a full and fair
record." Ellison, 355 F.3d at 1276; Ingram, 496 F.3d at 1269.
In fulfilling the duty to conduct a full and fair inquiry, the
ALJ is not required to order a consultative examination unless
the record establishes that such is necessary to enable the ALJ
to render a decision. See Ingram, 496 F.3d at 1269 ("The
administrative law judge has a duty to develop the record where
appropriate but is not required to order a consultative
examination as long as the record contains sufficient evidence
for the administrative law judge to make an informed
decision.").

It is only where a consultative examination is necessary
for the ALJ to make a decision due to some conflict, ambiguity,
or other insufficiency in the medical evidence that the

regulations require an ALJ to order a consultative examination.
See 20 C.F.R. § 404.1519(a)(2) ("When we purchase a consultative
examination, we will use the report from the consultative
examination to try to resolve a conflict or ambiguity if one
exists. We will also use a consultative examination to secure
needed medical evidence the file does not contain such as
clinical findings, laboratory tests, a diagnosis or prognosis
necessary for decision."), 20 C.F.R. § 404.1519a(b) ("A
consultative examination may be purchased when the evidence as a
whole, both medical and nonmedical, is not sufficient to support
a decision on your claim."); see also Hawkins v. Chater, 113
F.3d 1162, 1166 (10th Cir. 1997) ("The Secretary has broad
latitude in ordering consultative examinations.").

In this case, Plaintiff's contention that the ALJ lacked
sufficient evidence upon which to make an informed decision
regarding Plaintiff's limitations is incorrect. The ALJ had
sufficient evidence before her to accurately assess Plaintiff's
impairments. The ALJ provided a thorough analysis of Plaintiff's
medical treatment including the treatment under both Drs. Revels
and Ruan. Additionally, the record contains the results of a
number of MRIs and X-rays, none of which identified any
significant problems after Plaintiff's fusion surgery in 2005.
Also, Plaintiff testified that she was currently working part-
time approximately five days a week as a housekeeper, which is

medium unskilled employment, and that she is able to care for her personal needs, drive, and perform some housework.  In light of the foregoing, the undersigned finds that the evidence before the ALJ was sufficient to allow her to render an informed decision. Thus, the ALJ was not required to order a consultative orthopedic examination, and accordingly, Plaintiff's claim that the ALJ failed to develop the record must fail.

> **c.   Whether the ALJ erred by improperly rejecting Plaintiff's subjective complaints of pain.**

Plaintiff also argues that the ALJ erred in rejecting her subjective complaints of disabling pain.[7]   The Commissioner counters that the ALJ thoroughly discussed Plaintiff's complaints of pain and set forth multiple reasons which support her finding that Plaintiff's subjective complaints concerning the intensity, persistence and limiting effects of her symptoms were not fully credible.

---

[7] While Plaintiff alleges that the ALJ incorrectly found that an MRI of her cervical spine performed on July 16, 2009, showed no evidence of AP foraminal stenosis at C6-7 levels and no evidence of thoracic vertebral body abnormality, the undersigned has reviewed the relevant imaging results. The cervical MRI results from July 16, 2009, do indeed state that there was no evidence of AP or foraminal stenosis at C6-7 and that C7-T1 were normal in appearance. (Id. at 343). Further, an MRI of Plaintiff's thoracic spine taken that same day reflects no evidence of thoracic vertebral body abnormality. (Id. at 342).

The ALJ must consider all of a claimant's statements about her symptoms, including pain[8], and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528.  20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "... unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":[9]

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence that confirms the severity

---

[8] Pain is a non-exertional impairment.  Foote v. Chater, 67 F.3d 1553, 1559 (llth Cir. 1995).

[9] The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." Wilson v. Barnhart, 284 F.3d 1219, 1226 (llth Cir. 2002). Thus, failure to cite to the Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation. Here, the ALJ cited the appropriate regulations and noted that that she considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p. (Id. at 30).

> of the alleged pain arising from that
> condition or (b) a showing that the
> objectively determined medical condition is
> of such a severity that it can be reasonably
> expected to give rise to the alleged pain.

Wilson v. Barnhart, 284 F.3d 1219, 1225 (llth Cir. 2002). See
also Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991);
Hoffman v. Astrue, 2007 U.S. App. LEXIS 29163 (11th Cir. Fla.
Dec. 13, 2007).

Even if a plaintiff meets the pain standard, the analysis
does not end there. The ALJ must then turn to the question of
the credibility of the plaintiff's subjective complaints. See
Foote, 67 F.3d at 1560; Reliford v. Barnhart, 444 F. Supp. 2d
1182, 1189 n.1 (N.D. Ala. 2006) (The pain standard "is designed
to be a threshold determination made prior to considering the
plaintiff's credibility."). When evaluating a claim based on
disabling subjective symptoms, the ALJ considers medical
findings, a claimant's statements, statements by the treating
physician, and evidence of how the pain affects the claimant's
daily activities and ability to work. 20 C.F.R. § 416.929(a).

Credibility determinations are within the province of the
ALJ. Moore v. Barnhart, 405 F.3d 1208, 1212 (llth Cir. 2005).
However, where an ALJ decides not to credit a claimant's
testimony about pain, the ALJ must articulate "explicit and
adequate reasons" for doing so, or the record must be obvious as
to the credibility finding. Dyer v. Barnhart, 395 F.3d 1206,

1210 (11th Cir. 2005).  See also Jones v. Dep't of Health & Human
Servs., 941 F.2d 1529, 1532 (11th Cir. 1991).[10]  If proof of
disability is based on subjective evidence and a credibility
determination is, therefore, critical to the decision, "'the ALJ
must either explicitly discredit such testimony or the
implication must be so clear as to amount to a specific
credibility finding.'" Foote, 67 F.3d at 1562 (quoting Tieniber
v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no
explicit finding as to credibility is required, the implication
must be obvious to the reviewing court)).

In this case, the ALJ set forth the proper credibility
standard and then stated as follows with respect to Plaintiff's
credibility:

> After careful consideration of the evidence,
> the undersigned finds that the claimant's
> medically determinable impairments could
> reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements
> concerning the intensity, persistence and
> limiting effects of these symptoms are not
> credible to the extent they are inconsistent
> with the above residual functional capacity
> assessment.

---

[10] Additionally, the regulations of the Commissioner require
an ALJ to address the credibility of a claimant's subjective
complaints of pain in a particular manner. See SSR 96-7p
(mandating that the ALJ address in detail the basis for the
determination that the claimant's testimony on pain is not
credible).

In terms of the claimant's alleged cervical pain, the medical evidence indicates that treating physician, Xiula Ruan, M.D., administered epidurals on February 2008, June 2008 and October 2008 for diagnosis of cervical dystonia, retrocollis. A cervical spine MRI from December 31, 2008 showed mild degenerative desiccation of the cervical discs without significant narrowing of the spaces. There was no significant spinal canal or stenosis. A report from Dr. Ruan, on May 12, 2009, indicates that claimant had been under his care for chronic neck and back pain since July 2006. Claimant was taking Ultram and Lortab for pain symptoms, that she indicated allowed her to remain functional without side effects or sedation. On July 1, 2009, claimant presented to Mobile Infirmary Medical Center with acute lower back pain and a urinary tract infection. She was prescribed antibiotics and instructed to increase fluid intake. Cervical spine review from a MRI on July 16, 2009 showed no evidence of AP foraminal stenosis at C6-C7 levels; and no evidence of thoracic vertebral body abnormality. Discs at levels C7-T1 were normal in appearance. (Exhibits 3F; 4F; 7F; 11F-13F).

With regard to the claimant's kidney stones, records show that on September 28, 2007, she presented to Springhill Medical Center with an onset of right-sided pain with radiation to the groin area. Claimant was noted with a history of kidney stones that was consistent with the current episode. Claimant underwent a flush treatment that allowed her to pass the stone.

...

While it is credible that the claimant experiences some pain and functional limitations due to cervical pain and discomfort, it is not credible that she experiences the level of pain and physical restriction to the extent that she alleges

> to be disabled. Claimant underwent C5-6
> fusion for diagnosis of cervical
> degenerative disc disease on January 10,
> 2006. On May 12, 2007, treating physician,
> Dr. Ruan opined the claimant was able to
> drive while on medication, as it actually
> kept her functional. Another treating
> physician, Dr. Revels agreed. On July 12,
> 2007, it was noted that claimant had
> discontinued medicines during the day and
> was using lidocaine patches instead that
> allowed her to carry out her job as a
> driver. Dr. Revels suggested claimant could
> continue working as long as she did not take
> pain medicines while driving.

(Id. at 30-31).

The undersigned finds that the ALJ's credibility finding is
supported by substantial evidence. As observed by the ALJ, both
of Plaintiff's treating physicians opined that she is capable of
working as long as she does not take pain medications and muscle
relaxers while at work. Plaintiff also reported to her
physicians that she wanted to return to work and that she would
utilize lidocaine patches while at work, and reserve her pain
medications for use at home. (Id. at 226, 265). Additionally,
as noted supra, Plaintiff testified that she works part-time
cleaning hotel rooms, that she cares for most of her personal
needs, and is able to grocery shop, carry a gallon of milk, grip
a cup of coffee, turn a doorknob, prepare a simple meal, bathe
and dress herself, and perform some household chores like
washing dishes, washing clothes, and making her bed. (Id. at 52-
53).

Based on the foregoing, the undersigned finds that the ALJ's credibility finding is supported by substantial evidence and concludes that the ALJ's reasons for discrediting Plaintiff's testimony were clearly articulated in the decision. As noted above, this Court may not decide the facts anew, reweigh the evidence, or substitute its judgment but must accept the factual findings of the Commissioner where they are supported by substantial evidence and based upon the proper legal standards. Bridges v. Bowen, 815 F.2d 622 (11th Cir. 1987); see also Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1985).

## V.  Conclusion

For the reasons set forth above, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income, be **AFFIRMED**.

**DONE** this **28th** day of **September, 2012**.

                    /s/ SONJA F. BIVINS
              **UNITED STATES MAGISTRATE JUDGE**